WEST COAST ROOFING & MFG. CO. et al. v. ELABORATED READY ROOFING CO. et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1917. Rehearing Denied December 20, 1917.)

No. 2420.

1. PATENTS ⬥⟿328—VALIDITY—ORNAMENTAL PREPARED ROOFING.
   The Becker patents, No. 1,024,549 and No. 1,024,550, for a process for making ornamental prepared roofing and for the product of such process, are void for anticipation by the Bird patent, No. 1,181,827, which was first applied for.

2. PATENTS ⬥⟿91(1)—SUIT FOR INFRINGEMENT—BURDEN AND SUFFICIENCY OF PROOF.
   The burden rests on complainant in an infringement suit to prove an allegation that the patentee was the original and first inventor of the thing patented, and where in interference proceedings in the Patent Office, after the patent had been inadvertently issued, priority of invention was awarded to another, whose application was earlier, and to whom a patent was subsequently issued, which decision was affirmed by the Court of Appeals of the District of Columbia, the mere priority in date of the patent in suit is not sufficient to sustain such burden.

3. PATENTS ⬥⟿328—VALIDITY AND INFRINGEMENT—ORNAMENTAL PREPARED ROOFING.
   The Becker patents, No. 1,157,664 and No. 1,157,665, for a process for making ornamental prepared roofing and the resulting product, held void for lack of invention as to the first patent and claims 2, 3, 4, 6, and 7 of the second. Claims 1, 5, 6, and 8 of the latter held not infringed.

4. PATENTS ⬥⟿328—INFRINGEMENT—ORNAMENTAL PREPARED ROOFING.
   The Goldberg patent, No. 1,113,116, for a process of making ornamental prepared roofing and the resulting product, held not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Elaborated Ready Roofing Company and Mathias B. Becker against the West Coast Roofing & Manufacturing Com-

pany and J. H. Hurd. Decree for complainants, and defendants appeal. Reversed.

Suit by the West Coast Roofing & Manufacturing Company and J. H. Hurd against the Elaborated Ready Roofing Company and Mathias B. Becker. Decree for defendants, and complainants appeal. Affirmed.

Charles C. Bulkley, of Chicago, Ill., for appellants.

Rudolph Wm. Lotz and George L. Wilkinson, both of Chicago, Ill., for appellees.

Before KOHLSAAT, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. Two pending actions were consolidated in the District Court. In the one appellants were plaintiffs, and appellees were defendants; in the other appellants were defendants and appellees were plaintiffs. The District Court sustained all claims of four patents to Mathias H. Becker, the first two being Nos. 1,024,549 and 1,024,550, both granted April 30, 1912, and the other two being Nos. 1,157,664 and 1,157,665, both granted October 26, 1915; found appellants to have infringed each claim of all four patents; enjoined further infringement; and ordered an accounting. In the other suit, appellants' bill, involving the alleged infringement of patent No. 1,113,116, granted October 6, 1914, to S. H. Goldberg, was dismissed for want of equity.

[1] Appellee's first two patents are a process and a product patent pertaining to ornamented prepared roofing, which is also the subject-matter of the last two numbered patents, also a process and a product patent. Appellants' patent No. 1,113,116 is a combined process and product patent, pertaining to "waterproof roofing material." Still another patent to one Charles S. Bird, No. 1,181,827, is of utmost importance.

The dates are significant, though somewhat confusing. The order in which the applications were filed does not correspond with the order in which the patents were granted. Goldberg's application was filed first, July 11, 1910, Bird was second, August 21, 1911, Becker was third, February 1, 1912, for his first two patents, while applications for his second two patents were filed September 4, 1912, and May 3, 1913, respectively. Becker's first two patents were granted April 30, 1912, Goldberg's patent was granted October 6, 1914, and Bird's patent was granted May 2, 1916.

The constantly increasing demand for prepared roofing has spurred manufacturers of this product to produce, not only the most serviceable, but the most attractive, roofing. Prepared roofing of monotonous color and design is acceptable upon many buildings, but for dwellings and buildings of a higher class ornamentation is desirable. To meet this requirement, manufacturers have produced a myriad of designs and products, some of which have marked a distinct advance in the trade and have been the subject of patent grants. As in most products of commercial value, the element of economy in cost of construction has played its important part.

All the patents under consideration pertain to a roofing material

which gives a shinglelike appearance to the finished product. After the first two patents to Becker had been granted, the Patent Office discovered that an interference should have been ordered as to Bird's prior and pending application; and it so declared. In this interference proceeding the Patent Office decided in favor of Bird, and Becker appealed to the Court of Appeals of the District of Columbia, where he again lost. Appellees upon the trial of this suit claimed that they were able to prove, by evidence discovered since the above hearing, that Bird was not the first inventor of the product covered by the single claim of the Becker product patent.

All the patents under consideration have for their admitted object the giving of a varicolor shinglelike appearance to the finished product. Becker, Bird, and Goldberg used an asphalt base impregnated and coated with waterproof material, with a surface coat of granular grit or gravel. The particular novelty or asserted improvement consisted of applying to this preparation a coloring material which, viewed from a distance, produced the desired effect. Becker contends that his coloring material, a black asphalt paint, furnished an element supplied neither by Bird nor Goldberg. He claimed the asphalt paint acted as a solvent upon the asphalt base and mingled with it, and as a result the product wore much longer. The Goldberg patent (at least prior to the insertion of claim No. 2) merely called for a waterproof coloring material (ink was at first used) applied to the surface of the roofing material, and it did not become amalgamated with the asphalt base.

Prepared roofing material with an asphalt base was old in the art. The material, as well as the combination for making this waterproof roofing product, had been long known to, and extensively used by, the trade. Ornamentations and color effects, as such, were also old. As early as January 31, 1893, George S. Lee secured a patent, No. 490,668, for roofing material which provided for colored stripes; the specifications stating:

"This surface may be embossed or otherwise finished by painting in ornamental designs, the exterior surface to produce the effect of tiles, shingles, or other roofs. * * * "

A comparison of the language of the patents is instructive. Goldberg's first claim reads:

"The process of preparing ornamental roofing, consisting in coating the surface of a flexible absorbent material with a hot bituminous binder, while said binder is heated applying a layer of granular material, and before said binder is cool applying a layer of paint in designs."

In his description he says:

"The nature of the facing is such that it can be more accurately and effectively tinted or colored while in a heated condition, and the tinting or coloring matter also more effectively unites and mixes with the asphaltic solution with which the facing is mixed. * * * The coated web is then run through suitable pressing rolls. While still in its heated condition the web of roofing is run through a pair of rollers, one of which is provided with tinting or printing forms. The paint or tint applying form is provided with raised designs. The construction is such that the various designs are applied to the facing of the roofing symetrically and accurately and while the roofing is still in its heated condition."

Becker in his description says:

"This invention relates to improvements in what is known as prepared roofing, and has for its object to provide material of this character having on its exposed side a design in different colors in imitation of a shingle or tile roof. * * * This coating is of such a character as to cut into the asphaltum coating of the wool felt by partially dissolving the same, so that the second coating will become amalgamated with the first."

His claim reads as follows:

"Prepared roofing, comprising a sheet of fibrous material, impregnated and coated with a waterproof material, said coating being varied in thickness in various fields, a coating of granular grit, partially imbedded in said coating in the fields of least thickness, and a similar coating completely imbedded in the fields of greater thickness."

While Goldberg first made application for a patent, we conclude that with claim No. 2 eliminated (later herein discussed) he did not anticipate Becker's patent. The latter's use of an asphaltum paint or other coloring material, which acted as a solvent upon the asphalt base, was not anticipated by the application "of a layer of paint in designs," as described in claim 1 of Goldberg's patent. Evidence of actual practice by Goldberg strongly supports this conclusion. Instead of a solvent being actually used, appellant, though a manufacturer of asphalt paint, used ink for his coloring material, until after appellee's product was placed on the market.

But Bird's patent, the application for which was filed before Becker's application, was not so restricted. In his description Bird says:

"The object of the invention is so to construct building materials and particularly roofing paper having a layer of asphaltic or similar waterproof material provided with a coating of comparatively fine mineral particles that said surface may, in appearance, simulate a series of slates, and, in addition, to more securely fix certain areas of said particles in place. * * * In carrying this invention into practice it has been my main object to produce building material and particularly building paper having a more ornamental appearance than that heretofore constructed. * * *"

After describing the usual method of making the roofing material and efforts to relieve the monotony in appearance of such a production, he says:

"I now take fluid or semifluid material substantially of the nature of the material of the layer 6 and of a color contrasting with the general color effect of the combined particles 7, 7, and apply such material in areas, lines, or stripes 8, 8, of comparative thickness, in any predetermined pattern to the surface formed by the particles 7, 7, whereby said material of the areas 8, 8, forms a binder for the particles 7, 7, which it covers and, to some extent, unites with, the layer 6, while the contrasting color of such material 8, 8, forms a design or pattern on the outer surface of the strip by covering certain of said particles, groups or areas of said particles."

The figures 6, 6, refer to the asphaltum base, and the figures 7, 7, to the gravel, and 8, 8, is the paint or coloring material. Since novelty in the Becker patent is dependent upon this factor here described as 8, 8, Bird's further description is most significant. He says:

"While I prefer to make use of asphaltic material for layer 6, and for the overlay 8, 8, I do not limit myself to the use of such material. The particles 7, 7, may be grains of sand, soapstone, or any other natural or artificial particles adapted for the purpose herein described."

He then concludes:

"I prefer to apply the material forming the overlay pattern *8, 8,* in such a manner, *of such consistency* and condition that it will be readily received between the particles *7, 7, and to some extent will unite with material of the layer 6.*"

His claim 5 is as follows:

"Building material of the nature described comprising a base having an asphaltic layer furnished with a coating of fine mineral particles, and an overlay pattern of comparatively thick plastic material in which certain areas of said particles are embedded and covered, substantially as described."

Appellee's attorney describes the novel element in the Becker discovery as follows:

"The liquid is then applied upon the grit surface of the roofing, * * * to produce a design thereon in any desired configuration. The liquid thus applied completely envelopes and covers the grit particles and flows through the interstices between the same into contact with the asphaltic coating of the web, which it attacks and dissolves, so that, when dry, the asphaltum of the liquid is homogeneous and amalgamated with the said coating, which holds the grit particles in place."

The excerpt is significant as an admission. Briefly it might be said that novelty in Becker's patent lay in the use of the asphaltum paint because of its color effect, *combined· with* the effect produced on the asphalt base tending to greater endurance. The distinguishing fact being thus emphasized, and we believe, accurately stated, the conclusion necessarily follows that the Bird patent anticipated Becker's patents. Becker's product and process patents, Nos. 1,024,549 and 1,024,-550, must be declared invalid, unless Bird was not in fact the first inventor.

[2] The facts in reference to the issue of priority of discovery between Becker and Bird are unusual. After meeting defeat in the Patent Office and in the Court of Appeals for the District of Columbia, the controversy between these two patentees (Becker and Bird) was renewed in the United States District Court for the Western District of New York, where it was undisposed of at the time this decree was entered. Appellees in that equitable action, brought under section 4918 R. S. (section 9463, Comp. Stat. 1916), assert that Becker was the first inventor of the subject-matter covered by Becker's patent, and that they have discovered new and persuasive evidence bearing upon this issue since the disposition of this controversy by the Court of Appeals of the District of Columbia. At the time of the trial of this suit, this "new and persuasive" evidence had not been submitted in the pending suit in New York, nor was any such evidence offered on the trial in the District Court in this suit.

But it is contended that until this equitable suit, brought under section 4918, in the United States District Court, is disposed of, we are required to give full force and effect to Becker's patent. We think otherwise. Appellees' right to recover must rest upon the strength of their own claim, and not on the weakness of the opponent's position. Both Bird and Becker could not have been "the first, original, and sole inventor of the subject-matter," covered by the common claim.

Bird's application antedated Becker's and in the interference proceedings both the Commissioner of Patents and the Court of Appeals for the District of Columbia decided Bird's discovery antedated Becker's discovery. It follows, therefore, that notwithstanding Becker's patent was first issued (through inadvertence of the Patent Office), Bird's subsequently issued patent was a full anticipation of Becker's discovery.

We then have a situation where the record fails to show any evidence tending to defeat or impair the effect of the adjudication of the Commissioner of Patents, affirmed by the Court of Appeals for the District of Columbia. Appellees are required to substantiate the allegations set forth in their bill, the first and material one, of which was that they "were the first, original, and sole inventor of a certain new and useful improvement in the method of ornamenting and preparing roofing," described in the patent, and, having failed to sustain this material allegation, the suit must be dismissed. Of course, if appellees can prevail in their pending suit against Bird, brought under section 4918, R. S., a different situation will be presented. We are, however, required to determine this suit upon the evidence before us.

[3] Becker's two later patents deal with an improvement on the prior patents just considered. They are both dependent upon the use of sand or similar material upon the asphalt paint. In the later patents, patentee describes the manufacture of the prepared roofing, and closes the description in the following language:

"This is accomplished preferably in the manner and by the means fully described in letters patent Nos. 1,024,549 and 1,024,550, issued to me on April 30, 1912."

He further said:

"The particles (*F*) afford a protective coating for the pattern material and serve also to prevent the latter from adhering to the coat (*C*) when the roofing is rolled up for shipment."

In the process patent, issued on the same day, patentee says:

"The primary object of the invention is to provide means whereby such flow of the liquid after application to the roofing is prevented. To this end the present invention consists principally in thickening the liquid after application on the surface of the roof to prevent flow thereof, and thus to produce a well and sharply defined configuration on the roof."

Upon the oral argument, in support of these last two patents, appellees contended that the application of sand upon the asphalt paint resulted in ridges being formed, which in turn acted as a check to the flow of the water over the roof, and thus prevented the snow and ice from carrying off the grit. The testimony in the case, however, supports the conclusion here reached that these so-called dams or ridges were barren of practical value in the respects above asserted.

We deem an extended discussion of these patents unnecessary. In our opinion, the application of sand upon paint to prevent its spreading is not patentable invention. If doubt otherwise remained, it would disappear by reason of the issuance of patent No. 278,722 to Henry M. Miner, granted June 5, 1883, and covering "roofing fabric." In this patent the patentee says:

"The layer of sand is sufficient to act as a dryer and to cover the whole upper surface of the paper, so that the tar is not exposed at all, thus rendering the fabric easy to handle and preventing the liability of it sticking or adhering to other objects."

In view of this conclusion, it is unnecessary to consider appellants' further claim that they do not infringe either of these two patents.

In the consideration of all four patents to Becker, no claim has been made that, under the circumstances disclosed by the evidence, the process patents could stand in case the product patents were declared invalid. No separate consideration of the process patents is therefore necessary. It appears, moreover that numerous claims of the second process patent, particularly 1, 5, 6, and 8, are not infringed.

We conclude patent No. 1,157,664 is invalid, and claims 2, 3, 4, 6, and 7 of patent No. 1,157,665 are invalid, while claims 1, 5, 6, and 8 of said last-named patent are not infringed, and their validity is not decided.

[4] Appellants contend, in reference to the suit wherein they were plaintiffs in the court below, that the Goldberg patent, No. 1,113,116, contains two valid claims, which were infringed by appellees. As pointed out in the fore part of this opinion, claim No. 1 of this patent was not an anticipation of the first Becker product patent, and appellees did not infringe this claim. Claim 2 of the Goldberg patent reads:

"As a new article of manufacture, a flexible strip of roofing material, comprising a foundation of pliable absorbent fabric, a bituminous waterproof binder associated with the face of the fabric, a facing of granular material adhesively secured in place in the binder and having portions projecting above the surface thereof, and a waterproof coloring material applied *to a plurality of fields* or areas of the facing, contrasting with the interposed spaces and forming designs, said coloring material being *intimately associated* with the binder and *forming a covering* and an intimate union with the *surfaces* to which *it is applied*."

The italicized words render the construction of the claim difficult. Did the claimant refer to the asphaltum base or to the gravel thereon? Was patentee referring to the same material when he used the words "intimately associated" as when he used the words "forming a covering"? Would not the whole paragraph be more consistent and intelligent, if the words "forming a covering," appearing therein, limited and modified the words "being intimately associated with," appearing just above?

In view of the fact that the Bird application was then pending and the Becker patent had been recently granted, it is the most fair construction of the language of this claim to so restrict it as to exclude the product described in either Bird's or Becker's patent. This claim No. 2, as originally filed, never contemplated the use of a paint such as asphalt paint or any other coloring material that would act as a solvent for the asphaltum base. The file wrapper disclosed many modifications and amendments to this claim as originally filed. It appeared, clothed as above quoted, only after Becker's patent had been granted.

We conclude that this claim No. 2 of the Goldberg patent does not include a waterproof coloring material which is also a solvent for the asphaltum base. So construed, there was no infringement to be

enjoined, and its validity in view of the patent to Bird need not be considered.

The decree of the District Court in the suit wherein appellees are complainants and appellants are defendants, No. 396, is reversed, with directions to dismiss the bill. The decree in the suit wherein appellants are plaintiffs and appellees are defendants (No. 397) is affirmed. Appellants are to recover costs in this court.